IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF TEXAS DALLAS DIVISION

| | | |
|---|---|---|
| **S&W AIRCRAFT LEASING LLC** | § | |
| **Plaintiff** | § | |
| **v.** | § | **Civil Action No. 3:12-CV-00862-N** |
| | § | |
| **SKY LIMO CORPORATION** | § | |
| **Defendant** | § | |

---

## Findings of Fact and Conclusions of Law

---

S&W Aircraft Leasing, LLC ("S&W") owned two Hawker 800A jet aircraft. In 2011, S&W and Sky Limo Corporation ("Sky Limo") entered into two separate Aircraft Charter Management Agreements under which Sky Limo operated the Hawkers pursuant to its Part 135 certificate.

Ultimately, Sky Limo breached each of the Agreements, overcharged S&W for allegedly necessary maintenance, parts and repairs, negligently operated the aircraft causing damage to the aircraft interior and exterior, performed unnecessary inspections, maintenance and repairs, retained funds owed to S&W, failed to pay vendors which resulted in liens being placed on each of the Hawkers, and interfered with S&W's attempts to sell one or more of the Hawkers to potential buyers.

This matter was called to trial before the Court without a jury on September 30, 2014. Sky Limo failed to appear at trial in spite of having previously appeared and answered herein. Sky Limo failed to respond to calls to it on the day of the pre-trial hearings on September 29, 2014.

S&W then presented evidence on causation and damages. After hearing the evidence submitted, the Court makes the following findings of facts and conclusions of law:

## Findings of Fact

S&W is a Texas limited liability company with its principal place of business in Dallas, Texas. S&W is a resident and citizen of the State of Texas.

Sky Limo is a Florida Corporation and, as such, is a resident and citizen of the State of Florida. Its principal place of business is 5302 NW 21st Terrace, Fort Lauderdale, Florida 33309. Sky Limo conducted business in the State of Texas during the relevant time period.

Sky Limo is a certified air carrier in the business of entering into contracts with aircraft owners to charter their aircraft in accordance with Part 135 of the Federal Aviation Regulations.

S&W owned two Hawker 800A jet aircraft:

N359CF, Serial No. 258154, British Aerospace 125 Series 800A (N359CF); and

N54ES, Serial No. 258134, British Aerospace 125 Series 800A (N54ES)

(collectively the "Hawkers").

S&W owned both of the Hawkers and all records, parts, logbooks, tools and manuals relating to each of the aircraft.

Both of the Hawkers had been refurbished and equipped with new parts, avionics and full interior and had been painted immediately prior to being delivered and placed in the possession of Sky Limo. They were in "like new" condition with respect to these items.

On April 26, 2011, S&W and Sky Limo entered into two separate Aircraft Charter Management Agreements - one each for N359CF and N54ES. Except for the description of each individual aircraft's tail numbers and serial numbers, each Agreement was identical. Through the Agreements, Sky Limo was engaged to operate S&W's Hawkers under Sky Limo's Federal

Aviation Regulation Part 135 and not under Part 91.

Under the Agreements, Sky Limo agreed to maintain the Hawkers in excellent shape and knew that S&W expected Sky Limo to do so.  Sky Limo had the duty to observe and respect the bailment relationship and not employ the Hawkers in any other manner or for a longer period of time than what was contemplated or set out in the Agreements.

At all times S&W complied with all material terms of all the Agreements.

Sky Limo ultimately failed to fulfill material requirements of the Agreements, including but not limited to sections 2.1, 2.2, 3.2, 3.3, 5.1, 5.2, 9.2B, and 9.2B6.

For example, since the origination of the Agreements, Sky Limo retained and recovered every cost associated with operating, maintaining and repairing each Aircraft, even if it meant offsetting one plane's "Profit" against the alleged "Losses" attributable to another aircraft.  No provision in any of the Agreements allowed the accounting to be combined and the amounts owed or due offset.

Sky Limo overcharged S&W for alleged maintenance, repairs and inspections.

Sky Limo "marked up" outside repairs in an unreasonable amount even though S&W told Sky Limo at the beginning of the relationship it would not and was not agreeing to pay marked up charges.

Sky Limo charged unnecessary fees and expenses to S&W for its "in- house" maintenance. S&W addressed this with Sky Limo many times. Sky Limo agreed on several occasions to reduce the maintenance charges and give S&W credit for such charges, but then later refused to do so.

Sky Limo used the Hawkers under FAA Part 91 rules prohibited under the Agreements and failed to pay S&W for such use.

S&W incurred damages, including amounts paid to Sky Limo that were not owed, amounts paid to Sky Limo which Sky Limo offset against amounts owed on one Hawker against the other Hawker, charges that Sky Limo agreed to deduct after questioning as to their authenticity and amount, unnecessary and exorbitant fees with regard to alleged maintenance, repairs and inspections that were neither necessary or reasonably priced and third-party vendor bills which have not been paid.

Sky Limo kept money from unauthorized charter revenue but failed to pay third-party vendors, such as Avfuel. As a result, Avfuel filed liens on both Hawkers in Texas. The Texas Property Code provides that a fuel vendor may take possession of an aircraft if the fuel bill is not paid.

Sky Limo did not advise S&W that it had failed to pay Avfuel or any other third- party vendor such as the engine warranties. Instead, Sky Limo listed such expenses and reduced and retained charter revenue just as if Sky Limo had paid those expenses. Either the bills should have been paid or the revenue should have been turned over to S&W.

Sky Limo had actual knowledge of the consequences of its actions related to the breach of the Agreements. Sky Limo actions were intentional and malicious. For example, the following decisions and actions: Sky Limo made the decision to not pay Avfuel (and perhaps other third-party vendors); Sky Limo billed S&W for the third-party amounts that were not owed under the Agreements; Sky Limo represented and maintained that third-party invoices had been paid when they were not and then Sky Limo calculated S&W should "reimburse" Sky Limo for such third-party vendors.

In addition, Sky Limo kept the money that should have been paid to third-party vendors for its own use; Sky Limo made the conscious decision to file its own false lien and the alleged

amount Sky Limo was owed in the lien included the unpaid Avfuel invoices (and perhaps other third-party invoices); Sky Limo filed one or more false liens with actual knowledge that it had not paid the third-party vendors whose invoices formed the basis, in part, of its false liens.

Regardless, in late 2011, S&W exercised its contractual option (which were contained in each Agreement drafted entirely by Sky Limo) for Sky Limo to release and return the Hawkers and all property relating to the Hawkers.

In the early part of February, 2012, Sky Limo acknowledged financial disputes existed such that the contractual provision specifying Sky Limo would return the aircraft to S&W applied.

Sky Limo then agreed to return the Hawkers. Sky Limo agreed to return those two aircraft to S&W when the then last currently scheduled charter was concluded.  This agreement for Sky Limo to relinquish the Hawkers on the time table discussed was memorialized in writing and sent to Sky Limo on February 6, 2012, again on February 8, 2012 and again on February 13, 2012. Sky Limo did not respond or object to any of these communications thereby demonstrating it would honor its agreement to return N359CF as it had previously acknowledged and agreed.

On February 27, 2012, S&W sent Sky Limo a formal notice of termination of each of the Agreements.

On multiple occasions, S&W demanded that Sky Limo honor the previous agreement to return two of the Aircraft. Sky Limo either refused or did not respond to the requests.

Sky Limo flatly refused to release or give access to the Hawkers to anyone associated with S&W or any potential buyer who wanted to inspect or look at one of the Hawkers.

S&W gave Sky Limo both formal and informal notice of the damage being caused by Sky Limo locking away the two Hawkers and secreting all three Hawkers' logbooks and records.

Sky Limo failed and refused to return the Hawkers when requested even though the demands

_____

were made in accordance with the contractual provisions as well as the understanding of the parties and Sky Limo's express acknowledgement that S&W was marketing and attempting to sell the Hawkers.

By March 21, 2012, Sky Limo ceased chartering the two Hawkers still in its possession, fired all its Hawker pilots, placed N359CF in a locked hangar at Sky Limo's facility, refused access of any kind to S&W to either of those jets, would not give S&W or anybody else access to the logbooks and records for any of the Hawkers, and canceled the insurance on N54ES.

After S&W filed this suit, Sky Limo acknowledged it had no basis to continue to hold N359CF or any of the parts, records, logbooks, manuals, etc. for N359CF or N54ES.  S&W arranged for N359CF to be tugged to another facility near Sky Limo's facility; however, no records, logbooks or spare parts were turned over by Sky Limo. Sky Limo refused to return N355FA claiming it had a lien of the aircraft.

S&W's Managing Member peacefully took possession of N54ES in late March, 2012. However, N54ES logs and parts were not recovered.

As of the date of trial, Sky Limo had not returned parts, logbooks and records pertaining to both Hawkers.

After N359CF and 54ES were recovered, S&W begin to make a physical record of the damages to the two Hawkers.

N54ES and N359CF suffered extensive interior and exterior damage while under Sky Limo's control and in its possession.

The damage to both Hawkers was clearly and plainly visible to S&W's maintenance personnel.

In addition, multiple parts and many documents critical to the operation of the jets Sky Limo

_____

had in its possession were never returned.

S&W ultimately learned while Sky Limo had possession and control of the Hawkers, there were many unreasonable incidents and operational and maintenance failures that required maintenance and repairs which could have been avoided by Sky Limo providing proper maintenance and operational procedures as well as providing properly trained crews as set forth in the Agreements.

Much of the external damage was caused by Sky Limo's negligence in properly training the pilots as required by the Agreements.

Each Hawker ultimately had to be taken for interior and exterior repairs and refurbishment once they were recovered.

Sky Limo initially agreed to return any aircraft to S&W so the aircraft could be viewed by potential buyers which were intended to lead to the sale of one or more of the Hawkers.

Sky Limo knew when it entered into the Agreements S&W was attempting to sell all three of the Hawkers.

Despite such knowledge and agreement, when S&W advised Sky Limo that it had decided to not extend the contractual agreements beyond the initial term, Sky Limo refused to even pull one or more of the Hawkers from Sky Limo's hangar to allow prospective buyers to view them. S&W advised Sky Limo on multiple occasions, beginning in early 2012, that there were perspective buyers in Dallas for N359CF and N54ES.

Sky Limo clearly interfered with S&W's attempts to sell one or more of the Hawkers to potential buyers.

S&W also advised Sky Limo on multiple occasions that potential buyers wanted to look at and inspect one or more of the Hawkers and their records in Florida.

On one such occasion, S&W advised Sky Limo that a prospective buyer was in Florida at that time and wanted to view a Hawker, which was at Sky Limo's facility. Sky Limo's president refused to pull the jet out of the hangar for the prospective buyer to view it on the ramp.

On another occasion, Sky Limo took overt actions to keep S&W from having access to the Hawkers. For example, in early March, 2012, one of the Hawkers was in Sky Limo's maintenance hangar but Sky Limo would not allow anyone associated with S&W to even look at the jet, despite S&W's representatives being able to see through the open door that parts were being removed from that aircraft.

Ultimately, S&W requested on multiple occasions that Sky Limo make one or more of the Aircraft available for prospective buyers to look at them. All requests were refused.

Sky Limo also did not make records available to potential purchasers of the Hawkers.

Ultimately, S&W lost one buyer with a signed contract for $1,400,000.00 when Sky Limo refused to timely turn over N54ES.

## Conclusions of Law

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), in that the parties are citizens and residents of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

This Court has jurisdiction over Defendant pursuant to both specific and general jurisdictional provisions. Specific jurisdiction exists due to Defendant's contacts within Texas that relate to the relationship between Sky Limo and S&W including those relating to this cause of action.

### Breach of Contract

Sky Limo repeatedly breached its Agreements with S&W. Indeed, said breaches

---

were material and proximately caused damages and Sky Limo is liable for them and S&W is entitled to recover such damages. In addition, S&W is entitled to recover all its attorney's fees and costs of court with respect to Sky Limo's breach of contract.

<u>Negligence, Damages and Bailment Relationship</u>

Sky Limo had the duty to protect, care for, and not damage or cause damage to any of the Hawkers. A bailment relationship existed between S&W and Sky Limo.

The physical damages to the Hawkers resulted from Sky Limo's negligence because a bailment relationship existed.

Sky Limo's refusal to return or its failure to maintain the records, extra parts, logbooks and manuals further cause damages to the aircraft and to S&W. Due to the bailment relationship, Sky Limo caused damage to such items and damage to S&W.

Sky Limo's actions have derogated the title of each Hawker and imposed significant harm on S&W's possession.

Sky Limo, as a bailee, had a duty not to employ the property in any manner, or for a longer period of time than what is reasonable and necessary and contemplated.

Sky Limo's conduct since at least January 2012 proximately caused damages to S&W. Sky Limo is responsible for those damages.

Sky Limo has converted property and records rightfully belonging to S&W including records, parts, and tools. Sky Limo's refusal to return such property damaged S&W. Sky Limo's conversion entitles S&W to recover damages for conversion.

<u>Tortious Interference With Business Relations</u>

Sky Limo tortiously interfered with S&W's attempt to sell one or more Hawkers. This interference proximately caused damages and Sky Limo is liable for them and S&W is entitled to

recover such damages. Plaintiff is entitled to all its attorney's fees and costs of court such interference.

Declaratory Judgment

The Court finds that Plaintiff requests for declaratory judgment meets the legal standard set forth under Texas law. The declarations set forth herein serve to finally and fully clarify and settle all legal relations between the parties and will terminate and afford relief from the uncertainty, insecurity and controversy herein.

As such, the Court grants Plaintiff's request for declaratory judgment. Specifically, S&W owns and is immediately entitled to recover and possess any and all each and every logbook, instructional manual, maintenance log, flight record, squawk entry, part, tool, maintenance record and any other item or document relating to or purchased in connection with the Hawkers. In addition, S&W has no further obligations under the Agreements. Finally, S&W is entitled to all receivables related to both Agreements.

Such, entitlement and right to possession is binding on Sky Limo and any successor in interest and/or any party acting in concert with Sky Limo. In addition, the Court finds that Sky Limo and any successor in interest has no legal right or title to any such item listed herein and that any and all defenses related to such recovery and/or possession are forever waived under both the State law of Texas and Florida as well as Federal law in any jurisdiction. This finding finally and fully determines and establishes the rights, status and legal relationship with respect to the parties herein relating to the Hawkers and the Agreements. Plaintiff is entitled to all its attorney's fees and costs of court relating to this declaratory judgment.

Damages

The Court finds S&W is entitled to recover Two Million Seventy-eight Thousand Two

Hundred Twenty-eight Dollars and Fifty-one Cents ($2,078,228.51) in actual damages and Two

Hundred and Forty Thousand Dollars ($240,000.00) in attorney's fees and all costs of court.

SO ORDERED.

Signed November 14, 2014.

David C. Godbey
United States District Judge